158 N.J. Super. 536 (1978)
386 A.2d 890
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DENNIS BAKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1977.
Decided April 17, 1978.
*537 Before Judges LORA, SEIDMAN and MILMED.
Mr. Michael B. Blacker argued the cause for appellant.
Mr. David H. Rothberg argued the cause for respondent (Messrs. Sachar, Bernstein, Rothberg, Sikora & Mongello, attorneys).
The opinion of the court was delivered by MILMED, J.A.D.
This appeal stems from defendant's three convictions in the Plainfield Municipal Court for permitting more than one "family"[1] to reside in his home, located in an R-2 Residence District, in violation of the local zoning regulation.[2] He was again found guilty on review by the Union County Court which heard the case de novo upon the transcript of the sound recordings of the municipal court trial. N.J.S.A. 2A:3-6; R. 3:23-1, 3:23-2 and 3:23-8(a). Both courts imposed the same sentences, viz., a *538 fine of $200 on the first summons (No. 3006) and a fine of $25 on each of the remaining two summonses (No. 3028 and No. 3106). In the municipal court, payment of the fines on summonses Nos. 3028 and 3106 was suspended, while in the County Court payment of the fines on summonses Nos. 3006 and 3028 was suspended.[3] Court costs of $10 were imposed by each court.
On this appeal defendant contends that (1) the definition of "Family" as set forth in the Plainfield zoning ordinance is unconstitutional, and (2) the occupants of his home "constitute a single non-profit housekeeping unit."
The pertinent facts may be briefly summarized. Defendant Dennis Baker and his wife own a dwelling house at 715 Sheridan Avenue in Plainfield which is in an R-2 one-family residence zone as established by the local zoning ordinance, § 17:5-2. The basic (unconditional) "permitted uses" in the zone are the same as those for the R-1 residence district, viz.,
(1) A one-family detached dwelling not to exceed one dwelling on each lot, including the renting of rooms to not more than two (2) boarders or lodgers.
(2) Buildings, structures and uses owned and operated by the City.
Section 17:3-1(a)(17) of the zoning ordinance defines the term "Family" as used therein to mean:
One (1) or more persons occupying a dwelling unit as a single non-profit housekeeping unit. More than four (4) persons exclusive of domestic servants, not related by blood, marriage, or adoption, shall not be considered to constitute a family.
In addition to himself, his wife and their three children, other persons who occupied the dwelling during the period covered by the three summonses, from September 10 through *539 October 8, 1976, at the weekly rate for room and board of $40 per adult and $20 per child, were: Mr. and Mrs. Conata and their three children; Mr. and Mrs. Manderson and their two children, and Mrs. Norris and her child. For a brief period the Conatas moved out so that Mr. and Mrs. Johnson and their three children could move in. The Conatas returned to the house after the Johnsons left.[4] The Bakers were not related by blood or marriage to any of the other family units.
Defendant was an ordained minister of the Presbyterian Church. He had previously served congregations but was at the time of trial in the municipal court employed otherwise. He perceived the several groups living together in the same house not as separate families, but rather as an "extended family" united by their Evangelical Christian faith.
The County Court Judge found that defendant's household constitutes a single non-profit housekeeping unit.[5] He determined, however, that since the number of unrelated persons in residence exceeded four, the pertinent provisions of the Plainfield zoning ordinance had been violated. He also held that Plainfield could constitutionally limit the number of unrelateds to four in defining a "family" for zoning purposes. *540 Defendant argues that the ordinance is unconstitutional in that it places a numerical limit on unrelated persons who can live together, while placing no such limit on related persons.
The finding of the County Court Judge that defendant's household "constitutes a `single non-profit housekeeping unit' within the meaning of § 17:3-1(17) of the Plainfield Zoning Ordinance" could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole. We discern no sound reason for disturbing it. State v. Johnson, 42 N.J. 146, 162 (1964). We do not, however, agree that the ordinance's limitation of "four" on the number of unrelated persons in residence who can be considered part of "a family" is without constitutional impediment. While this limitation may not violate federal constitutional guarantees, see Village of Belle Terre v. Boraas,[6] 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), "New Jersey courts have consistently invalidated zoning ordinances that were unreasonably restrictive in delineating permissible occupants." Berger v. State, 71 N.J. 206, 224 (1976). See Kirsch Holding Co. v. Manasquan, 59 N.J. 241 (1971); Gabe Collins Realty, Inc. v. Margate City, 112 N.J. Super. 341 (App. Div. 1970); Holy Name Hospital v. Montroy, 153 N.J. Super. 181 (Law Div. 1977). Zoning restrictions must
*541 * * * * * satisfy the demands of due process. Substantive due process requires that zoning regulations be reasonably exercised; they may be neither unreasonable, arbitrary nor capricious. The means chosen must have a real and substantial relation to the end sought to be achieved. Moreover, the regulation must be reasonably designed to resolve the problem without imposing unnecessary and excessive restrictions on the use of private property. Kirsch Holding Co. v. Borough of Manasquan, supra, 59 N.J. at 251; J.D. Construction Corp. v. Board of Adjustment of Township of Freehold, 119 N.J. Super. 140, 145 (Law Div. 1972). [Berger v. State, supra, 71 N.J. at 223-224]
In the totality of the circumstances here involved, we are satisfied that in precluding recognition of more than four unrelated persons (exclusive of domestic servants) as part of "a family" the Plainfield ordinance, like the Mantoloking ordinance in Berger, "so narrowly delimits the persons who may occupy a single family dwelling as to prohibit numerous potential occupants who pose no threat to the style of family living sought to be preserved."[7]Id. at 224. Accordingly, we cannot say that the definition of "family," as so limited in § 17:3-1(a) (17), is reasonable or that it does not impermissibly infringe upon the right of privacy or freedom of association. See N.J. Const. (1947), Art. I, par. 1.
While we hold invalid the second sentence of § 17:3-1 (a) (17) of the Plainfield zoning ordinance above quoted, we particularly note a suggested guideline for a valid approach "to maintain a prevailing family environment" in *542 one-family residence zones. Thus, in Berger the Court pointed out:
While we have not hesitated to strike down zoning ordinances that fail to satisfy the demands of substantive due process, we are not unmindful of the problem confronting many municipalities which desire to maintain a prevailing family environment. Their need is to enact ordinances that will both withstand judicial scrutiny, and at the same time exclude uses that may impair the environment. We believe a satisfactory resolution of this problem would result, were local governments to restrict single family dwellings to a reasonable number of persons who constitute a bona fide single housekeeping unit. If such a requirement were incorporated into zoning ordinances, it would not only perpetuate the stability, permanence and other beneficial attributes long associated with single family occupancy but also preclude uses closely approximating boarding houses, dormitory and institutional living. Such an enactment  if carefully drawn  would be both reasonably related to the end of maintaining a peaceful family residential style of living  an end we uphold as a legitimate goal of zoning  and yet be neither excessive nor overreaching in its sweep. [71 N.J. at 225]
See also, Justice Stevens' concurring opinion in Moore v. East Cleveland, 431 U.S. 494, 513-521, 97 S.Ct. 1932, 1943-1947, 52 L.Ed.2d 531, 546-550 (1977).
The convictions under review are reversed and the sentences imposed thereon are vacated.
NOTES
[1] As defined in the local zoning ordinance, § 17:3-1(a)(17); see infra.
[2] § 17:11-2, relating to certificates of occupancy.
[3] After specifying that "Payment on Summons 3006 and 3028 is suspended," the judgment mistakenly provides: "Fine of $200.00 to be paid to Municipal Court."
[4] Counsel for appellant points out in his brief that

While the number of residents in the Baker home varied during the period covered by the summonses, there were at all times a minimum of four adults and six children in residence. At one point, a total of fourteen persons resided in the home.
[5] I. e., he found:

Defendant and the other occupants of his house eat and do many other things together, much as would a more traditional extended family. While they do share expenses, at a fixed rate per person, the State's contention that this converts defendant's home into a rooming house is without merit. This fixed rate agreement, within the setting of defendant's home, is no different than a parent accepting money from a working child for room and board. This payment in no way alters their relationship, and I find that the household constitutes a "single non-profit housekeeping unit" within the meaning of § 17:3-1(17) of the Plainfield Zoning Ordinance.
[6] The Belle Terre zoning ordinance restricted land use to one-family dwellings and defined "family" as "[o]ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family." A majority of the Court sustained the ordinance, applying the traditional equal protection test, i.e., whether the ordinance was reasonable, not arbitrary, and bore a rational relationship to a permissible state objective.

See also, the critical analysis of the majority opinion in "The Supreme Court, 1973 Term," 88 Harv. L. Rev. 13, 119-129 (1974).
[7] The Mantoloking zoning ordinance involved in Berger restricted the residential zone in which the subject property in that case was located to "`single family dwellings,' defined as `detached building[s] designed for, or occupied exclusively by, one family in one dwelling unit.'" "Family" was defined as

one person living alone or two or more persons related by blood, marriage or adoption and living together as a single unit in one house or within one curtilage and under one head (pater or mater familias); domestic servants, one companion, one housekeeper and occasional non-paying guests may be included but no other person.
[Berger v. State, supra, 71 N.J. at 217-218]